**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| BRIGHT IMPERIAL LIMITED, a Hong Kong limited liability company,<br><br>       Plaintiff,<br><br>  v.<br><br>RT MEDIASOLUTIONS S.R.O., et al.,<br><br>       Defendants. | Civil Action No. 1:11-cv-935-LO-TRJ |

## OPPOSITION TO MOTION TO DISMISS

Plaintiff Bright Imperial Ltd. ("Bright") has brought this action in response to pervasive and ongoing infringement of its registered trademarks through the registration of Internet domains and the operation of websites intended to exploit its widely recognized brand.  The moving defendants, RT Mediasolution, S.R.O., Swiss Media Factoring GMBH, and Walter Olligschlager ("Moving Defendants") have made a motion to dismiss for lack of personal jurisdiction.

Their motion is premature.  There is no deadline for effecting service of process on defendants outside of the United States, and Bright is diligently pursing service pursuant to the Hague Convention.  Similarly, Bright is in the process of completing service pursuant to the *in rem* provisions of the Anti-Cybersquatting Consumer Protection Act ("ACPA").  That process is nearly complete.  (Bright motion for an order approving notice by publication is pending.)  Again, no deadline has passed.  Thus, Moving Defendant's motion is premature.

Their motion is also baseless.  Their own admissions are sufficient to support the exercise of personal jurisdiction, either under Virginia's long-arm statute or under the federal long-arm

-1-

statute under Federal Rule of Civil Procedure 4(k)(2). Even if they were not, Bright would be entitled to jurisdictional discovery to test the Moving Defendants' assertions.

Moreover, Moving Defendants ignore the fact that they have no standing to assert any defense or make any motion with respect to at least nine of the domains that are the subject of this action. As they are not the registrants of those domains, they have no basis for seeking any relief from the Court with respect to them.

Ultimately, Moving Defendants' motion boils down to the contention that Bright may not plead in the alternative both *in rem* claims under the ACAP and *in personam* claims under the ACPA, the Lanham Act, and Virginia law. That contention is also wrong. Bright's ability to plead in the alternative is assured by the Federal Rules of Civil Procedure, and nothing in the ACPA precludes it. Bright recognizes that an *in rem* proceeding is based on the absence of personal jurisdiction and that it must elect between these alternatives, but nothing requires it to do so before it has had the opportunity to test whether personal jurisdiction exists.

The motion to dismiss is without merit, and should be denied.

## **FACTUAL BACKGROUND**

Moving Defendants disingenuously attempt to portray themselves as legitimate businesses, innocuously offering services primarily in Europe where they claim to have some rights to a "Redtube" mark. *See, e.g.,* Motion at 3-6.[1] This portrait is a fiction. Moving Defendants' entire business enterprise is based on trademark infringement and cybersquatting. They register and use infringing domain names to profit from the popularity of Bright's

---

[1] In Europe, trademark registrations are generally issued to the first to apply for registration, rather than the first to use the mark. Moving Defendants have exploited this fact in an effort to legitimize their cybersquatting. However, the evidence of Bright's prior use and Moving Defendants' bad faith are clear. (Complaint, Dkt. No. 1, ¶¶ 32-42, 46-59.) Moreover, Bright has also perfected European and international trademark rights. (Complaint, Dkt. No. 1, ¶ 44.)

trademarks and websites, and the trademarks and websites of other established adult content providers.  To date, Bright has identified the 28 defendant domain names in this action (the "Infringing Domains") that Moving Defendants have registered or are utilizing in bad faith to exploit Bright's famous mark.  In addition, Bright has identified 17 other websites and domain names utilized by Defendants to infringe the trademarks of other online adult websites (the "Other Infringing Sites").  Declaration of Tenaya Rodewald ("Rodewald Decl."), filed herewith, ¶¶ 2-8; Exhs. 1, 2; Declaration of Robin Regnier ("Regnier Decl."), filed herewith, Exh. A, pp. 1, 2, 4, 5, 9, 11, 14, 17, 20, 23.  Moving Defendants own or control the Other Infringing Sites and operate them as part of the same infringing enterprise.  The Other Infringed Sites have identical video content to <red-tube.com>, can be can be accessed with the same account login and password as <red-tube.com>, and target the United States.  Rodewald Decl., ¶ 6.

Utilizing the Infringing Domains, Moving Defendants intentionally create ongoing, obligations, relationships and contracts with U.S. and Virginia residents in order to profit from those contacts.  To begin, Moving Defendants admit that the <red-tube.com> website alone has had at least *1.3 million* visitors from the United States and *35,352* visitors from Virginia since January 2007.  Declaration of Walter Olligschlager ("Olligschlager Decl."), ¶¶ 28-29.  Moreover, Moving Defendants admit that <red-tube.com> alone has at least *430 Registered Users* from the United States and *13 Registered Users* from Virginia.  Olligschlager Decl., ¶¶ 31-32.

Moving Defendants have ongoing relationships with these users and provide them a highly interactive website experience, including video viewing and download, live chat and webcams and personalized profiles, as explained in Moving Defendants' own submission and the accompanying declarations.  *See* Rodewald Decl., ¶¶ 10-13; Olligschlager Decl., ¶ 20.  Moving Defendants provide an *ongoing service* for each video purchased because they place it in a user's account where the user can continue to access it.  Rodewald Decl., ¶¶ 10-11, Exh. 4.  Moving

Defendants enter into a additional long-term contractual relationships with users who upload videos because the users must accept additional Terms and Conditions, set the price for their videos and Moving Defendants then pay the user 25% of the profits from the videos to the users. Rodewald Decl., ¶ 15, Exh. 8; Olligschager Decl. ¶ 22.  Moving Defendants admit that United States residents have uploaded at least *150 videos* to <red-tube.com> alone.  Olligschlager Decl., ¶ 34.  Further, Moving Defendants enter into long-term, contractual relationships with individuals to post advertisements for, and direct web traffic to the Infringing Domains, and pay these individuals on an ongoing commission basis.  Rodewald Decl., ¶ 16, Exh 9; Olligschlager Decl., ¶ 38.  Moving Defendants conspicuously fail to say how many of these advertisers are United States or Virginia residents and how many target the U.S.  *Id.*

Finally, as noted, Moving Defendants operate the Other Infringing Sites as part of the same enterprise as the Infringing Domains, share content and user profiles between sites, and use the Other Infringing Sites to obtain content for the Infringing Domains from the United States. Several of the Other Infringing Sites are targeted specifically at the United States, and users who register for the Other Infringing Sites are automatically permitted to access <red-tube.com> as well.  Rodewald Decl., ¶ 8, Exh. 2.  Moving Defendants conspicuously fail to mention these sites or state how many United States and Virginia users they have.

## LEGAL ARGUMENT

A.    **Moving Defendants Do Not Have Standing to Move to Dismiss Bright's** *in rem* **Claims as to Certain Infringing Domains**

Moving Defendants are not the registrants of at least 6 of the Infringing Domains (<redtube.net>, <reds-tube.com>, <red-tube.biz>, <redtube24.net>, <and redtube-hardcore.com>

and <red-tube.net>).  *See* Rodewald Decl., ¶ 17.[2]  Confirming this, Moving Defendants themselves admit that they do not control at least eight of the twenty-eight Infringing Domains, including the domains <my-redtube.com>, <redtube24.com>, <red-tube-porn.net> in addition to the six listed above.  Olligschläger Decl., ¶ 16.d.  Indeed, Moving Defendants do not assert that they are the registrants for *any* of the Infringing Domains except one.  *See* Olligschläger Decl., ¶ 51 ("I am the registrant for one domain name listed in the complaint, redtubetestaccount.com.").

Because Moving Defendants are not the registrants of at least nine of the Infringing Domains, and have not even asserted that they are the registrants of or otherwise control those domains, Moving Defendants do not have standing to move to dismiss Bright's *in rem* claims against the nine Infringing Domains they do not own.  *See, e.g.,* 15 U.S.C. § 1125(d)(1)(D) (the only individuals or entities that may liable in an *in personam* action are "the domain name registrant or that registrant's authorized licensee"); 15 U.S.C. § 1125(d)(2)(A)(ii)(I) (*in rem* jurisdiction is only available where plaintiff is unable to obtain *in personam* jurisdiction over "a person who would have been a defendant in a civil action under [section 1125(d)(1)(D)]").  Moving Defendants motion must be denied at least as to those domains.

**B.**     **The Motion to Dismiss Based on Alleged Failure to Serve Moving Defendants Under the Hague Convention is Premature**

The only deadline for perfecting service, the 120-day deadline provided by Federal Rules of Civil Procedure Rule 4(m), does not apply to service on the Moving Defendants, and even if it did apply, Bright is still well within that deadline.  Thus, their motion to dismiss is premature.

---

[2]     Registrants are required to provide accurate and current contact information to their registrars, and the registrars are required to make this information available to the public through their "Whois" services.  *See* Rodewald Decl., ¶ 19.  The Whois databases thus list the official registrant of each registered domain name.

Moving Defendants are residents of the Czech Republic and Switzerland.  Olligschlager Decl.,

¶ 3.  Rule 4(m) explicitly makes the 120–day time limit inapplicable to service of parties in a

foreign country.  Fed.R.Civ.P. Rule 4(m).  *See also Lucas v. Natoli*, 936 F.2d 432, 432–33 (9th

Cir.1991) ("The plain language of [Rule 4(m)] makes the 120–day service provision inapplicable

to service in a foreign country."); *Nylok Corp. v. Fastener World Inc*., 396 F.3d 805, 807 (7th

Cir. 2005); *USHA (India), Ltd. v. Honeywell Intern., Inc*., 421 F.3d 129 (2d Cir. 2005).[3]  In any

case, Bright filed the Complaint in this action on September 2, 2011.  *See* Dkt. No. 1, Complaint.

Thus, even if the 120-day deadline for service applied, Bright is still well within that deadline.

Bright is in the process of perfecting service on Moving Defendants under the Hague

Convention.  Bright has obtained Summons for all three Moving Defendants, obtained the

necessary translations, and sent the documents to the Central Authorities for service in

Switzerland and the Czech Republic.  *See* Dkt. No. 3, Sept. 13, 2011 (Summons issued); Dkt.

No. 23, Nov. 7, 2011 (Summons issued to Walter Olligschläger); Regnier Decl., ¶ 6, Exh. B.

In sum, there is no deadline for Bright to serve Moving Defendants and Bright is

diligently pursuing service under the Hague Convention.  Therefore, Moving Defendants have no

basis for moving to dismiss for lack of service at this time.

---

[3]  Moving Defendants cite *United States ex rel. Thomas v. Siemens AG*, 708 F. Supp. 2d 505,
522-23 (E.D. Pa. 2010) for the proposition that courts apply a "flexible due diligence" standard
to determining if service in a foreign country is timely.  To Bright's knowledge, this approach
has not been approved by any federal Court of Appeal.  *See, e.g. O'Rourke Bros. Inc. v. Nesbitt
Burns, Inc*., 201 F.3d 948, 953 (7th Cir. 2000) (holding that Rule 4(m) deadline does not apply to
foreign service, but that if "a plaintiff has gone beyond a failure to serve ***and has also failed to
adhere to the orders of the court***, the situation may transform itself from a simple failure to
obtain service to a failure to prosecute the action [under Rule 41(b)]." (emphasis added).).
Moreover, Moving Defendants have not alleged that Bright unreasonably delayed serving them
or that they have been prejudiced in any way by the fact that they have not yet been served.
*Siemens AG*, 708 F. Supp. at 522 (even under the "flexible due diligence" standard, courts
consider "the reasonableness of the plaintiff's effort and the prejudice to the defendant resulting
from any delay").  For these reasons as well, Moving Defendants' motion is baseless.

**C.**     **The Motion to Dismiss Bright's** *In Rem* **Claims for Lack of Service Under the ACPA Is Premature and Baseless**

In *in rem* actions under the ACPA, service is accomplished by:  "(aa) *sending* a notice…

to the registrant of the domain name at the postal and e-mail address provided by the registrant to

the registrar; and (bb) publishing notice of the action as the court may direct…"  15 U.S.C.

§§ 1125(d)(2)(A)(ii)(II)(aa-bb) (emphasis added); *Id.*, § 1125(d)(2)(B) ("The actions under

subparagraph (A)(ii) shall constitute service of process.").

**1.**     **Moving Defendants' allegation that Bright has not effected service on the Infringing Domains is premature.**

Bright is in the process of completing service as prescribed by the ACPA.  On November

4, 2011, Bright moved for an order to publish notice of this action.  *See* Dkt. No. 19, Nov. 4,

2011; Dkt. No. 20, Nov. 4, 2011 (Memorandum of Law in Support of Motion for an Order to

Publish Notice of Action Re Domain Names Identified in the Complaint) ("Motion to Publish

Notice").  As explained in detail in Bright's Motion to Publish Notice, throughout September and

much of October, Bright sent notices to the e-mail and postal addresses the registrants of the

Infringing Domains provided to their respective registrars.  Motion to Publish Notice at p. 2-4, 7,

Exs. 1, 2.  Indeed, Bright went above and beyond the minimum requirements of the ACPA

because Bright also identified alternative e-mail and postal addresses for many Infringing

Domain registrants, and sent notice to the alternative addresses as well.  *Id.*  Bright was able to

confirm that every registrant of an Infringing Domain received notice either by e-mail or by

FedEx® delivery to a postal address, and all but two received both.  *Id.*, Ex. 2, ¶ 11-17, Ex. 3.

Bright then filed its Motion to Publish Notice, requesting that the Court order publication of the

notice 14 days after the entry of an order granting the motion.  Such publication will complete

service under the ACPA.  *See* Dkt. No. 19.

The ACPA imposes no specific deadline for completing *in rem* service, and Bright has been more than diligent in effecting such service.  If Bright fails to comply with the Court's order regarding publication, Moving Defendants may renew their motion.  Until such time, however, Moving Defendants' assertion that Bright has failed to properly effect service is premature and their motion should be denied.

**2.      Moving Defendants' allegation that Bright has failed to effect proper service is baseless because Bright sent the required notice and Moving Defendants admit receiving it**

Moving Defendants complain that they "have not ***received*** notice of Bright Imperial's *in rem* claims at both the postal and email addresses provided to the various registrars."  Motion at 8 (emphasis added).  However, "the statute makes clear that proof of ***receipt*** is not required." *Cable News Network L.P., L.L.L.P. v. CNNews.com*, 162 F.Supp.2d 484, 494 (E.D.Va. 2001) aff'd in relevant part, vacated in part on other grounds, 56 Fed. Appx. 599 (4th Cir. 2003) (emphasis added); *see also* 15 U.S.C. § 1125(d)(2)(A)(ii)(aa) (service is accomplished by "***sending*** a notice… to the registrant…").  Thus Bright is only required to ***send*** notice to the registrants of the Infringing Domains at the postal and email addresses the registrants provided to their registrars.  It is not required to demonstrate that the notice was received.  As set out in detail in Bright's Motion to Publish Notice, Bright *sent* notice of this action to those addresses.  Motion to Publish Notice at p. 2-4, 7, Exs. 1, 2.   Indeed, even though Bright is not required to do so, Bright obtained proof that the notices were delivered to the email and postal addresses of all three Moving Defendants.  Declaration of Karin Johnson filed herewith, ¶¶ 4-8, Exs. 1-5.

(FedEx® and registered e-mail proofs-of-delivery showing that notice was delivered to the postal and email addresses for Moving Defendants).[4]

Moreover, Moving Defendants **admit** that they received notice of the Complaint. Olligschläger Decl., ¶ 50 ("***Defendants'*** initial notice of this action came through the mailing of the Complaint via FedEx to ***their places of business***." (emphasis added)).  Furthermore, Walter Olligschläger is the managing director of Defendants RT Mediasolutions S.R.O. and Swiss Media Factoring GmbH, and he admits receiving courier and email notice of the complaint.  *Id.*, ¶ 1 ("I am a Defendant in this action, and the managing director of Defendant RT MediaSolutions, S.R.O. (RT MediaSolutions) and Defendant Swiss Media Factoring GMBH (Swiss Media)."), ¶ 51 ("I received written notice by courier and email of the Complaint in this case on October 14, 2011.").  Moving Defendants have no grounds for seeking dismissal of the *in rem* claims against the Infringing Domains they registered, and their motion should be denied.

Finally, as noted above, Moving Defendants do not have standing to bring their Motion as to at least nine Infringing Domains because Moving Defendants are not the registrants of those domains.  *See* Rodewald Decl., ¶ 17.  Moving Defendants motion must be denied for this reason as well.

**D.    Moving Defendants Are Subject to Personal Jurisdiction in this Court, and if There is Any Question of Jurisdiction, Bright Should be Permitted to Conduct Jurisdictional Discovery and an Evidentiary Hearing**

When a district court decides a pretrial motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need prove only a *prima facie* case of personal

---

[4]  As noted above, Registrants are required to provide accurate and current contact information to their registrars, and the registrars are required to make this information available to the public through their "Whois" services.  *See* Rodewald Decl., ¶18.  Thus, Moving Defendants cannot be heard to complain that they did not receive notices that were delivered to the addresses available through Whois.

jurisdiction.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  "In deciding whether the plaintiff has proved a *prima facie* case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor."  *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984).  Alternatively, the court may hold a full evidentiary hearing to resolve the factual issues related to jurisdiction.  In this case, both parties must be allowed to conduct discovery on the jurisdictional issues, to submit affidavits and, when appropriate, to offer live testimony.

First, this Court may exercise jurisdiction to the extent permitted by the Virginia long-arm statute.  Fed.R.Civ.P. Rule 4(k)(i); *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009).  Virginia's long-arm statue provides multiple bases for jurisdiction and "extend[s] personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment."[5]  *Id.* at 293.  Thus, jurisdiction may be exercised if Moving Defendants' contacts with Virginia are sufficient to satisfy due process.  *Id.*

Similarly, a defendant may be subject to personal jurisdiction under the "Federal long-arm statute," Fed. R. Civ. P. 4(k)(2), if:  (1) The defendant has sufficient aggregate contacts with the Untied States as a whole so that exercising jurisdiction is consistent with Due Process; (2) the claim arises under federal law; and (3) the defendant is not subject to jurisdiction in any state's

---

[5]  Virginia's long-arm statute provides jurisdiction over a person "as to a cause of action arising from the person's: 1. Transacting any business in the Commonwealth; 2. Contracting to supply services or things in this Commonwealth; 3. Causing tortious injury by an act or omission in this Commonwealth; 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services

courts of general jurisdiction. *See* Fed. R. Civ. P. 4(k)(2); *Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589, 596-97 (E.D.Va. 2003). Importantly, the Fourth Circuit first analyzes whether a defendant is subject to jurisdiction under the state's long-arm statute, and if it is not, then assesses whether jurisdiction is proper based on the defendant's contacts with the United States as a whole. *CFA Institute*, 551 F.3d at 292. "By analyzing personal jurisdiction under the state's long-arm statute first, the Fourth Circuit allows the plaintiff to argue in the alternative that a court may exercise jurisdiction under a Rule 4(k)(1) or 4(k)(2) analysis." *Synthes v. G.M. Dos Reis JR. Ind. Com.*, 563 F.3d 1285, 1294 (Fed. Cir. 2009).

"The first element of the Rule 4(k)(2) analysis requires the same minimum contacts due process analysis as is conducted under Rule 4(k)(1)(A), with the significant difference that the relevant forum is the United States as a whole." *Graduate Management,* 241 F.Supp.2d at 597. The Moving Defendants apparently contend that their extensive contacts with Virginia do not subject them to personal jurisdiction here. As explained below, they are wrong.

With regard to the third element of Rule 4(k)(2), courts generally require that the defendant name a state in which it is subject to jurisdiction or concede that jurisdiction is not available in any state. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (adopting the Seventh Circuit's view); *Holland America Line Inc. v. Wärtsilä North America, Inc.,* 485 F.3d 450, 461 (9th Cir.2007); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005). Defendants have failed to do either. However, they are nonetheless subject to personal jurisdiction under the Virginia long-arm statute or the federal long-arm statute.

---

rendered, in this Commonwealth." Virginia Code § 8.01-328.1(A)(1)-(4). Bright alleges that jurisdiction is proper under all of these sections.

> **1.      Due Process in the Internet context is satisfied when a defendant purposefully avails itself of the privilege of conducting business in the forum**

Moving Defendants seek to avoid a key principle of personal jurisdiction:  defendants who "'reach out beyond one state' and create continuing relationships and obligations with the citizens of another state are subject to regulation and sanctions in the other State for consequences of their actions."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  As ever, jurisdiction is proper when a defendant "purposefully avails itself of the privilege of conducting activities within the forum State."  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  "Different results should not be reached simply because business is conducted over the Internet."  *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997).

In addressing jurisdictional contacts based on online activities, the Fourth Circuit adopted the *Zippo* "sliding scale" model for specific jurisdiction.  *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002) (quoting *Zippo*, 952 F.Supp. at 1124).  At one end of the scale, personal jurisdiction generally is not exercised if the defendant does nothing more than post information on a publicly accessible but "passive" website.  *Zippo*, 952 F.Supp. 1124.  In the middle, addressing websites that are semi-interactive and interactive but not commercial, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."  *Id.*  Finally, at the other end of the scale, "'where a defendant clearly does business over the Internet'" and "'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper."  *ALS Scan*, 293 F.3d at 713 (quoting *Zippo*, 952 F.Supp. 1124).  Moreover, specific jurisdiction is proper where a person "(1) directs electronic activity into the State, (2) with the manifested intent

of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action." *Id.* at 714.

Moving Defendants incorrectly argue that the Fourth Circuit ***also*** requires that a defendant's online conduct be specifically designed to attract or serve the forum's audience, and jurisdiction cannot be based on a small number of internet based customers.  Motion at 12.  They claim that their websites are not specifically designed to attract or serve United States or Virginia residents in preference to residents of other states and countries.  *Id.* at 12-16.  They claim the websites "focus outside of the U.S." and target European customers, and only a small percent of business is from the U.S.  *Id.* at 13, 12.

However, Moving Defendants argument is based on a seriously mistaken interpretation of the law.  They incorrectly assert that the analysis courts use for middle ground, semi-interactive or non-commercial websites applies to situations where "a defendant clearly does business over the Internet."  However, where defendant clearly does business over the internet, and "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet," the exercise of personal jurisdiction is proper, and no further analysis is required.  *ALS Scan*, 293 F.3d at 713.  This is because a defendant doing business over the internet and intentionally entering into contracts with a forum's residents has, for due process purposes, purposely availed itself of the target forum.  It has "expressly aimed" and "directed" activity to the forum with a "manifest intent" to engage in business there. *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 890 (6th Cir. 2002) ("A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.").  Indeed, by conducting business with forum residents, a defendant inherently "reaches out beyond

one state and creates continuing relationships and obligations with the citizens of another state,"
*Burger King,* 471 U.S. at 475.  Nothing more is needed to satisfy due process.

For this reason, this Court found jurisdiction proper and rejected the argument that
defendant's casino gambling website was "not purposefully directed at Virginia or its residents."
*Alitalia-Linee Aeree Italiane S.p.A. v. Casinoalitalia.Com*, 128 F.Supp.2d 340, 350 (E.D.Va.
2001).  The website was inherently interactive, and it necessarily required defendant to enter into
contracts with Virginia residents who purchased "coins" to play the website's games.  *Id.*  Thus,
even though only *five* of defendant's customers were Virginia residents, the website "interacted
with Virginia consumers to such degree as to put [defendant] on notice that it is purposefully
directing its activities at Virginia and its residents."  *See also Thompson v. Handa-Lopez, Inc.*,
998 F.Supp. 738, 744 (W.D.Tex. 1998) (operator of arcade website subject to personal
jurisdiction in Texas because website was highly interactive and defendant "entered into
contracts with the residents of various states [including Texas] knowing that it would receive
commercial gain at the present time").

Similarly, in *Zippo*, the defendant was subject to specific jurisdiction because it operated
an online news service that provided passwords to, collected payments from, and contracted
with, subscribers in the plaintiff's jurisdiction.  *Zippo*, 952 F.Supp. at 1126.  Defendant
"repeatedly and consciously chose to process Pennsylvania residents' applications and to assign
them passwords… [knowing] that the result of these contracts would be the transmission of
electronic messages into Pennsylvania."  *Id*.  In such circumstances, the defendant could not
claim its contacts were 'fortuitous' or 'coincidental' for jurisdictional purposes.  *Id.*  "When a
defendant makes a conscious choice to conduct business with the residents of a forum state, 'it
has clear notice that it is subject to suit there.'"  *Id.*

In *Community Trust Bancorp, Inc. v. Community Trust Financial Corp.*, 2011 WL 673751 (E.D.Ky. Feb. 17, 2011), a bank created "continuing relationships and obligations" with Kentucky residents supporting personal jurisdiction in a trademark infringement action when it sent passwords to *four* Kentucky residents "knowing and intending that the recipients would maintain their account in the Defendants' banks and continuously and systematically access those accounts." "[W]hen the Defendants sent passwords to Kentucky residents, this was intentional activity" and revealed "a specific intention to interact with these customers." *Id.* at *5, *6. *See also 3M Co. v. Icuiti Corp.*, 2006 WL 1579816, *2-3, 81 U.S.P.Q.2d 1761 (D.Minn. June 1, 2006) (specific personal jurisdiction in a Minnesota trademark infringement action was proper where defendant, through its website, advertised products, took orders, processed payments and shipped items to five Minnesota residents).

The cases Moving Defendants rely on are not to the contrary.  In particular, the cases do *not* hold that where a defendant intentionally conducts business and has ongoing relationships over the internet with forum residents, the defendant's website must also be specifically 'designed to attract or serve' that forum.  As explained, courts consider whether the defendant's website reveals a specific intent to target the forum only if the defendant has not created continuing relationships and obligations with forum residents.  In such cases, the intentional targeting of a semi-interactive website can provide alternate evidence that the defendant intentionally sought to transact business in the forum and avail itself of the protection of the forum's laws.  *See, e.g., Graduate Management,* 241 F.Supp.2d at 598, fn. 17.  But such alternative evidence of purposeful availment is unnecessary when the defendant actually does business in the forum.

Thus, in *ALS Scan*, the defendant internet service provider ("ISP") did nothing more than supply the internet facilities and "bandwidth" that the tortfeasor used to publish infringing

photographs. *ALS Scan,* 293 F.3d at 714-15.  There was no jurisdiction because ISP's role was "at most passive" and involved no direct commercial contact or other transactions with the forum.  *Id.* at 715 ("Surely, it cannot be said that [the ISP] 'purposefully availed' itself of the privilege of conducting business" in the forum.).  In *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390 (4th Cir. 2003), there was no jurisdiction in Maryland over defendant, an Illinois based non-profit that provided information and solicited donations through its website, because defendant had no transactions with forum residents.  *Id.* at 394. While the website was semi-interactive, "the only concrete evidence of online exchanges between [defendant] and Maryland residents was the single donation initiated by [plaintiff's] counsel." *Id.* at 401.[6]

Finally, *Graduate Management Admission Council v. Raju*, 241 F.Supp.2d 589 (E.D.Va. Jan. 23, 2003), is highly instructive and flatly contradicts Moving Defendants' arguments.  In *Graduate Management*, defendant sold allegedly infringing GMAT test preparation materials over his website and made two shipments to Virginia.  *Id.*  The court first considered the Virginia

---

[6]  *See also Young v. New Haven Advocate*, 315 F.3d 256, 263-3 (4th Cir. 2002) (where small, out-of-state newspapers that did not engage in any transactions in the forum, and only alleged basis of jurisdiction was posting of news articles on a website, it was appropriate to ask whether newspapers directed content to forum's audience); *Corrosion Technology Intern., LLC v. Anticorrosive Industriales Ltda*, 2011 WL 3664575, *6 (E.D.Va. Aug. 19, 2011) (defendant operated a 'semi-interactive' website, but there was no evidence that the website resulted in any business from Virginia or that defendant "transacted business" in Virginia); *Knight v. Doe*, 2011 WL 2471543, *3 (E.D.Va. June 21, 2011) (defendant's only activity was posting allegedly defamatory statements on website, but defendant did not engage in any transactions in forum); *Silver Ring Splint Co. v. Digispint, Inc.*, 2007 WL 1052488 (W.D.Va. April 5, 2007) (the court ordered jurisdictional discovery into whether defendants nationwide contacts would support jurisdiction under Rule 4(k)(2) even though defendant's only known contacts were that it operated a website offering allegedly infringing material, attended at least two tradeshows in the United States, sold at least two of its products in the United States (one in Virginia), and sent marketing emails to a professional association's members).  *J. McIntyre Machinery v. Nicastro*, __ U.S. ___, slip op. (2011) does not address Internet based contacts although the plurality opinion reinforced that purposeful availment is the touchstone of personal jurisdiction.

long-arm statute and found that, "although the question is close," "[t]he interaction in this case with Virginia residents was minimal; [defendant] simply shipped the materials to the two customers at the addresses they provided." *Id.* at 595.  Because there was so little interaction and contact with Virginia customers, the court considered whether the defendant's website targeted Virginia residents, and found that it did not. *Id.*  However, the court found that defendant was subject to jurisdiction under Rule 4(k)(2) based on his aggregate contacts with the U.S. *Id.* at 598-600.  Although the Court undertook an analysis of the facts showing that defendant "targeted" his website to the U.S., *id.* at 598, Moving Defendants incorrectly conclude that this type of analysis is necessary in all cases.  Quite to the contrary, the court explained that it undertook this analysis because there was no evidence of more than two actual transactions. *Id.*, fn. 17 ("In other cases, simply aggregating contacts on a nationwide basis instead of on a state by state basis may provide sufficient contacts to support the conclusion that the defendant knowingly directed his activities into the forum, but such is not the case here.").  Moreover, the court explained that it was irrelevant whether the website primarily targeted foreign customers so long as it also targeted United States customers. *Id.* at 599 ("However, even assuming that the website does 'principally target' foreigners, it is nonetheless clear that [defendant] is also directing his activities, at least in part, at the United States.").

> ### 2. Jurisdiction over Moving Defendants Comports with Due Process because they purposely availed themselves of the privilege of conducting business in Virginia and the United States

Moving Defendants utilize the Infringing Domains and websites to form highly interactive, ongoing, contractual relationships with Virginia and United States users.  As in *Alitalia*, users must register for accounts and purchase "coins" in order to access most content on defendants' websites. *Alitalia*, 128 F.Supp.2d at 350.  Registered users must agree to <red-tube.com> Terms and Conditions.  Olligschager Decl., ¶ 21.  They then may engage in a wide

variety of activities, including:  watching, downloading and posting videos; rating and commenting on videos; interacting live with other users through livechat, emails an Internet phone call; creating and maintaining on-line profiles; and purchasing content and experiences. Id. at ¶ 20.  By their own admission, Moving Defendants have entered into ongoing contractual relationships with at least 13 Virginia residents who have become registered users.  Olligschager Decl., ¶ 31.  Moving Defendants' relationship with these registered users is of the "the quality and nature" that Moving Defendants have purposefully availed themselves of the privilege of conducting business in Virginia and jurisdiction is proper under Virginia's long-arm statute.  *See Neogen*, 282 F.3d at 891-2 (finding personal jurisdiction based on 14 yearly contracts because "[t]he proper test for personal jurisdiction is not based on a 'percentage of business' analysis… but rather on whether the absolute amount of business … represents something more than 'random, fortuitous, or attenuated contacts' with the state."); *Alitalia*, 128 F.Supp.2d at 350; *Community Trust Bancorp*, 2011 WL 673751 (E.D.Ky. Feb. 17, 2011).

Even if jurisdiction cannot be grounded on Moving Defendants' Virginia contacts alone, their aggregate United States contacts are numerous, ongoing, even more interactive and certainly adequate to support jurisdiction.  At least 430 U.S. residents are registered <red-tube.com> users.  Olligschager Decl., ¶ 32.  Moreover, Moving Defendants admit that United States users have uploaded at least 150 videos to <red-tube.com>.  *Id.*, ¶ 34.  Moving Defendants pay the United States residents for these videos on an ongoing basis.  Rodewald Decl., ¶ 15. Moving Defendants "approved" the United States residents before permitting them to upload videos, they required the U.S. residents to provide proof of age for each participant in the videos and the U.S. residents had to enter into an additional contract with Moving Defendants to upload the videos.  Olligschager Decl., ¶ 22.  Finally, Moving Defendants have registered and operate

the Other Infringing Sites that specifically target the United States.[7]  Moving Defendants operate

the Other Infringing Sites as part of the same enterprise as the Infringing Domains and use the

sites to obtain content for the Infringing Domains from the United States.[8]  There is nothing

"fortuitous" or "coincidental" about Moving Defendants' United States contacts.  Rather they are

intentional relationships made to profit Moving Defendants, and are more than sufficient to

satisfy the requirements of due process.[9]

> **3.      Defendant Olligschlager is subject to personal jurisdiction because of his personal participation in Moving Defendants' infringement**

Moving Defendants claim that Bright has not sufficiently alleged the basis for jurisdiction

over Olligschlager.  Motion at 14-15, fn. 8.  By his own admission Olligschlager is the registrant

of at least one of the infringing domains.  Olligschlager Decl., ¶ 51.  Thus, he has personally

infringed Bright's trademarks by registering and using the domain.

Moreover, Bright alleges that Olligschlager, personally, and as registrant of the Infringing

Domain, conspires with and acts as the alter ego of the other defendants in operating the

Infringing Domains and websites to exploit Bright's trademarks for their own profit.  Dkt. No. 1,

Complaint, ¶ 29.  Bright further alleges that Defendants RT Mediasolutions, Swiss Media

Factoring and Olligschläger comingle funds, do not maintain separate individual and corporate

---

[7]  Among other things, these Other Infringing Sites contain a specific page regarding compliance with United States Code Title 18, Section 2257, and place a link to this "18 U.S.C. Section 2257 Compliance Notice" at the bottom of every page.  Rodewald Decl., ¶ 7, Exh. 1.

[8]  The Other Infringing Sites display exactly the same content as <red-tube.com> and can be accessed with the same account login and password as <red-tube.com>.  Rodewald Decl., ¶ 6. Videos posted by users of these Other Infringing Sites" are displayed on the Infringing Domains including <red-tube.com>.

[9]  Again, it is irrelevant whether the U.S. contacts represent only a small fraction of Moving Defendants' business.  *Carefirst,* 334 F.3d at 397 (courts "should not 'merely ... count the contacts and quantitatively compare this case to other preceding cases'" because "[e]ven a single

identities, and are the alter egos of each other.  *Id.*  Notably, none of these allegations are

disputed.  Olligschlager has engaged in this conduct in order to perpetrate a concerted and unjust

cybersquatting scheme against Bright and others.  *Id.*, at ¶¶ 46-59.  Thus, Bright has alleged

sufficient facts to support personal jurisdiction over Olligshlager, and Moving Defendants do not

even contradict Bright's allegations.  *See, e.g., Newport News Holdings Corp. v. Virtual City

Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011).  Even if the Court finds insufficient evidence to

support jurisdiction over Olligshchlager at this time, Bright should be permitted to conduct

limited jurisdictional discovery, as discussed in Section 5, below.

### 4.    Moving Defendants conduct causes injury in Virginia and throughout the United States

Moving Defendants make the meritless argument that because Bright is not a Virginia

resident, their actions did not cause injury or create a cause of action in Virginia or the United

States.  Motion at 16-17.  However, Moving Defendants' use of the Infringing Domains "injured

Virginia and U.S. residents because the use '(i) is likely to cause confusion, mistake, and

deception of Virginia and U.S. consumers and (ii) dilutes the distinctive quality of [plaintiff's]

famous mark, and thereby damages plaintiff's business, reputation, and goodwill among Virginia

[and U.S.] consumers."  *Alitalia*, 128 F.Supp.2d at 348 (citation omitted).  Moreover, "a cause of

action for trademark infringement occurs where the passing off occurs."  *Zippo*, 925 F.Supp. at

1127 (citation omitted); *Graduate Management*, 241 F.Supp.2d at 593 (action for cybersquatting

and trademark infringement arose out of defendant's website activities for specific jurisdiction

purposes).

---

contact may be sufficient to create jurisdiction … provided that the principle of 'fair play and
substantial justice' is not thereby offended.")

5.      **If the Court does not find jurisdiction established, Bright should be permitted to conduct jurisdictional discovery**

"If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, at 350-351, n.13 (1978)  ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.")  Thus, "[a]lthough the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us*, 318 F.3d at 456 (citation omitted); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (discovery "'should be granted where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'").

Bright has alleged, with reasonable particularity, contacts between Moving Defendants and Virginia and the United States as a whole more than sufficient to warrant limited jurisdictional discovery in the event the Court does not find personal jurisdiction established. Thus, Bright should be permitted to take discovery regarding at least the following categories of information: (1) the U.S. and Virginia customers for each Infringing Domain and Other Infringed Site (including the number of such customers, the length and nature of the relationship with them, any activity logs for the customers, their purchases); (2) Moving Defendants' advertising efforts with respect to each Infringing Domain and Other Infringed Site (including whether any advertising is targeted to the U.S. or Virginia, the expenditures on advertising, the reach of any advertising, and traffic generated from the advertising); (3) Information about U.S. and Virginia

"affiliates" for each Infringing Domain and Other Infringed Site (including whether any "affiliates" target the U.S. or Virginia or are U.S. or Virginia residents, payments to affiliates, traffic and revenues generated by and from affiliates); (4) the use of the Other Infringing Sites to target the U.S. and Virginia; (5) the acquisition history for each Infringing Domain and Other Infringing Site (including whether they were acquired from U.S. or Virginia residents); (6) the level of interactivity and nature of online operations for each Infringing Domain and Other Infringing Site; and (7) Olligschlager's financial and business relationships with the other defendants (including Moving Defendants' corporate structure, history, ownership, governance, and minutes of board meetings).

**E.    Bright May Plead *In Rem* and *In Personam* Claims in the Alternative, at Least Until Jurisdictional Discovery Is Complete**

Federal Rules of Civil Procedure Rule 8(d) expressly permits plaintiffs to plead in the alternative, and to plead inconsistent theories and claims.  Rule 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); Rule 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *Wright v. Olin Corp.*, 697 F.2d 1172, 1184 -1185 (4th Cir. 1982) (parties may "advance and are entitled to have considered alternative and even inconsistent theories." (citing Fed.R.Civ.P. 8(e)(2) the prior version of current Rule 8(d)(3))); *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1273-74 (11th Cir. 2009) (Rule 8(d) "expressly permits the pleading of both alternative and inconsistent claims."); *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007) (nothing in the Rules prevents a party from making "inconsistent or even contradictory allegations" and "inconsistent allegations are simply not a basis for striking the pleading"); *Stockton East Water Dist. v. U.S.*, 583 F.3d 1344, 1368 (Fed. Cir. 2009).

Pleading under Rule 4(k)(2) provides a closely analogous situation, and under that Rule, plaintiffs are permitted to plead alternative, "inconsistent" bases for personal jurisdiction. Rule 4(k)(2) contains requirement similar to The ACPA's *in rem* jurisdiction provisions, stating that jurisdiction is only available if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed.R.Civ.P. 4(k)(2). Plaintiffs are nevertheless allowed to plead jurisdiction under a state long-arm statute and jurisdiction under Rule 4(k)(2) in the alternative. *Synthes v. G.M. Dos Reis JR. Ind. Com.*, 563 F.3d 1285, 1294 (Fed. Cir. 2009). For example, the Fourth Circuit first analyzes whether a defendant is subject to jurisdiction under the state's long-arm statute, and if it is not, then assesses whether jurisdiction is proper based on the defendant's contacts with the United States as a whole. *CFA Institute*, 551 F.3d at 292.[10] "By analyzing personal jurisdiction under the state's long-arm statute first, the Fourth Circuit allows the plaintiff to argue in the alternative that a court may exercise jurisdiction under a Rule 4(k)(1) or 4(k)(2) analysis." *Synthes,* 563 F.3d at 1294.

Moving Defendants cite *Alitalia* for the proposition that ACPA *in rem* and *in personam* claims may not be pleaded in the alternative. *Alitalia*, 128 F.Supp.2d at 346, fn. 13. However, nothing in the ACPA precludes a plaintiff from **pleading** both *in rem* and *in personam* jurisdiction in the alternative, and "[a]n approach that forecloses alternative [jurisdictional] arguments appears to conflict with the Federal Rules of Civil Procedure." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed.Cir. 2009) (holding that plaintiff may plead jurisdiction

---

[10] In dicta in *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* the court noted that while "'it is generally permissible for a litigant to present inconsistent alternate positions in a case,' the problem here is that to determine that another state lacks jurisdiction would require us to decide a question currently pending before at least one of our sister circuits." 283 F.3d 208, 215 (4th Cir. 2002). In light of *CFA Institute*, 551 F.3d at 292, it seems this cannot be read as prohibiting a plaintiff from pleading jurisdiction under a state long arm statute and jurisdiction under Rule 4(k)(2) in the alternative.

under relevant state long-arm statute and Rule 4(k)(2) in the alternative in part because

prohibiting alternative pleading would contravene the Federal Rules).  As the *Alitalia* court itself

explained, the "Section 1125(d)(2)(A) must be interpreted to mean that a mark owner may

***maintain*** an *in rem* action against a domain name only if the court finds, after suit is filed, that

the requirements of [its jurisdictional clauses] are met."  *Id.* at 344, fn. 7 (emphasis original).[11]

Thus, the reasonable interpretation of the ACPA, and the one consistent with the Federal Rules

and precedent, permits plaintiffs to plead *in rem* and *in personam* jurisdiction in the alternative,

and then requires the Court to determine whether personal jurisdiction exists.

There would be no advantage to dismissing either Bright's *in rem* or *in personam* claims

at this time, because the Court will still have to first determine whether it has personal

jurisdiction over Moving Defendants.[12]  Once this question is answered, it will become

immediately apparent whether Bright's *in rem* or *in personam* claims may move forward, and

Bright or the Court can dismiss whichever claims should not proceed.  Therefore, Bright should

be permitted to maintain the *in rem* and *in personam* claims until any jurisdictional discovery is

complete and the Court determines whether it has personal jurisdiction over Moving Defendants.

Finally, depending on the Court's determination with respect to the exercise of personal

jurisdiction over the Moving Defendants, it may be necessary for Bright to pursue *in personam*

claims against the Moving Defendants while pursing *in rem* claims against domains controlled

---

[11]  The *Alitalia* court also claimed that an *in rem* plaintiff "bear[s] the burden to demonstrate some indicia of due diligence in trying to establish personal jurisdiction," *id.* at 347, fn. 17 (citation omitted), and it is difficult to see how this should be done other than by pleading and attempting to acquire personal jurisdiction.

[12]  The *in rem* claims cannot go forward unless the Court finds personal jurisdiction lacking, so the Court must assess personal jurisdiction over Moving Defendants in any event.

by others who are not subject to personal jurisdiction.  Dismissal is inefficient and inappropriate for this reason as well.

## CONCLUSION

The motion to dismiss should be denied, and the Court should find that the Moving Defendants are subject to the personal jurisdiction of the Court.  If it does so, the Court should direct the Moving Defendants to identify the Infringing Domains of which they are the registrants, and may direct Bright to dismiss its *in rem* claims as to the domains of which the Moving Defendants are the registrants.  If the Court does not believe the evidence already before it is sufficient to justify the exercise of personal jurisdiction, it should permit Bright to conduct jurisdictional discovery, and postpone the determination of this motion until that discovery has been concluded and Bright has been afforded an opportunity to file a further response to this motion.  In the unlikely event the Court concludes that there is no basis for personal jurisdiction or discovery, it should dismiss only Brights' *in personam* claims, and permit Bright to continue to pursue the *in rem* claims.

Dated: November 18, 2011          Respectfully submitted:

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

/s/Sheldon M. Kline
Sheldon M. Kline (Va. Bar No 27959)
James M. Chadwick (admitted *pro hac vice*)
Thayer M. Preece (admitted *pro hac vice*)
Karin H. Johnson (admitted *pro hac vice*)
Tenaya Rodewald (admitted *pro hac vice*)
Sheppard Mullin Richter and Hampton, LLP
1300 I Street, NW 11th Floor East
Washington, DC  20005
Telephone: (202) 772-5378
Facsimile (202) 218-0020
skline@sheppardmullin.com

Attorneys for Plaintiff Bright Imperial Limited

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2011, I will electronically file

the OPPOSITION TO MOTION TO DISMISS, DECLARATION OF TENAYA RODEWALD,

DECLARATION OF KARIN JOHNSON and DECLARATION OF ROBIN REGNIER with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

> Swiss Media Factoring
> Walter Olligschläeger
> RT Mediasolutions
>
> Jay C. Johnson, Esquire
> DORSEY & WHITNEY LLP
> 1801 K Street, NW, Suite 750
> Washington, D.C.  20006

> s/ Sheldon M. Kline
> Sheldon M. Kline (Va. Bar No 27959)
> James M. Chadwick (admitted *pro hac vice*)
> Thayer M. Preece (admitted *pro hac vice*)
> Karin H. Johnson (admitted *pro hac vice*)
> Tenaya Rodewald (admitted *pro hac vice*)
> Sheppard Mullin Richter and Hampton, LLP
> 1300 I Street, NW 11th Floor East
> Washington, DC  20005
> Telephone: (202) 772-5378
> Facsimile (202) 218-0020
> skline@sheppardmullin.com
>
> Attorneys for Plaintiff Bright Imperial Limited