UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

BRIGHT IMPERIAL LIMITED,

       Plaintiff,

v.

RT MEDIASOLUTIONS, S.R.O., *et al.*,

       Defendants.

Civil Action No. 1:11-cv-00935-LO-TRJ

## MOTION TO DISMISS COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSES OF DEFENDANTS RT MEDIASOLUTIONS, S.R.O, SWISS MEDIA FACTORING, GMBH, AND WALTER OLLIGSCHLÄGER AND MEMORANDUM IN SUPPORT

Pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, plaintiff Bright Imperial Limited ("Bright"), by and through undersigned counsel, respectfully submits this Motion to Dismiss Counterclaim and Strike Affirmative Defenses of Defendants RT Mediasolutions s.r.o., et al.  For the reasons set forth below, Bright respectfully requests that the Motion be granted and requests that the Court dismiss with prejudice the Counterclaim that RT Mediasolutions s.r.o., Swiss Media Factoring GmbH and Walter Olligschläger ("Defendants") assert against Bright.  Bright further requests the Court strike the Affirmative Defenses Defendants allege in their Answer.

## I.  INTRODUCTION

At the outset of this action, Walter Olligschläger stated under oath that "RT MediaSolutions and Swiss Media have never asserted rights, and do not, in the future, intend to assert rights to the "RedTube" mark in the United States, including in the Commonwealth of

-1-

Virginia."  (Declaration of Walter Olligschläger, Dkt. 17-1, ¶ 45; Memorandum of Law in Support of Defendants' Motion to Dismiss, Dkt. 17, p. 6.)  Nonetheless, incredibly, Defendants now assert that they have been harmed by Bright's assertion of its legitimate U.S. trademark rights in the United States and the Commonweath of Virginia, and seek the cancellation of Bright's U.S. trademark registrations.

Defendants do not dispute the propriety of Bright's U.S. trademark applications or the resulting U.S. trademarks.  Instead, they allege insufficient compliance by Bright's predecessor with respect to one aspect of its application for international registration of the REDTUBE trademark, which was based on the U.S. applications.  Even if there were a sound basis for that allegation, which there is not, it fails to provide any basis for the cancellation of Bright's U.S. trademarks.  A court may order cancellation of a U.S. registered trademark only on a valid statutory grounds, and Defendants' pleading does not allege or otherwise describe any statutory basis for cancellation.  No matter how construed, Defendants' allegations of "wrongful" use of Bright's U.S. Registrations do not constitute a counterclaim.  Nor do Defendants allegations assert a viable defense because Defendants do not allege Bright engaged in any wrongdoing in connection with the rights Bright asserts in this action.  Even if Defendants' allegations were a viable defense, however, Defendants' assertions still would not support cancellation of Bright's U.S. Registrations.

Nor can Defendants assert a counterclaim for cancellation of Bright's international application because neither the relevant international treaty, nor any provision of United States law implementing it, provides any basis for Defendants to bring a claim based on alleged non-compliance with the international application procedures.  Further, nothing in these laws or treaties permits the original U.S. trademark application or registration to be cancelled based on

any alleged insufficiency or impropriety in the international application.  In addition, Defendants

assert no legally cognizable injury and so lack standing to maintain their "Counterclaim."

Moreover, granting the relief Defendants seek by ordering cancellation of Bright's U.S. and

international applications would be largely futile since Bright could still maintain this action

based on its common law trademark rights and Bright would have a grace period to convert its

international application into national registrations.

Finally, Defendants' "Affirmative Defenses" must be stricken because they are

conclusory legal statements wholly devoid of any supporting factual content, fail to give Bright

adequate notice of Defendants' contentions, and fail to meet the requirements of Federal Rule of

Civil Procedure 8.

## II.    BACKGROUND

Bright owns and operates the RedTube website [www.redtube.com](www.redtube.com) ("RedTube"), and

owns the REDTUBE trademark, which it uses to identify and brand RedTube.  (Complaint, Dkt.

1, ¶ 32.)  Bright's predecessor in interest began using the mark REDTUBE (the "REDTUBE

trademark") in interstate commerce on its website no later than July 2006.  Since that time,

Bright and its predecessor in interest have continuously used the REDTUBE trademark in

interstate commerce in connection with RedTube and with the provision of adult entertainment

services.  (*Id.*, ¶ 33.)  Bright owns or has acquired from its predecessor in interest all rights in the

REDTUBE trademark.  (*Id.*, ¶ 43.)

Bright has obtained United States trademark Registrations No. 3884412 and No. 3843119

(Bright's "U.S. Registrations").  (*Id.*)  Bright's predecessor in interest, Jager & Polacek GmbH

("Jager"), filed the application that became Registration No. 3884412 on October 31, 2008, and

the registration issued on November 30, 2010.  (Complaint, Exhibit A.)  Bright's predecessor in

interest filed the application that became Registration No. 3843119 on January 14, 2009, and the

registration issued on August 31, 2010.  (Complaint, Exhibit B.)  Jager assigned its U.S.

trademark rights to Bright, by means of an assignment dated September 11, 2009 and recorded

with the U.S. Patent and Trademark Office.  (*See* Complaint, Exhibits A and B; Request For

Judicial Notice, filed concurrently herewith ("RJN"), Exhibit A.)  On April 22, 2009, Jager

applied for international registration of the REDTUBE mark under the Protocol Relating to the

Madrid Agreement Concerning the International Registration of Marks ("Madrid Protocol").

This application was subsequently assigned to Bright.  (RJN, Exs. B, C.)

On September 2, 2011, Bright brought this lawsuit alleging *in personam* trademark

infringement and cybersquatting claims against Defendants, and alleging *in rem* cybersquatting

claims against 28 domain names.[1]   Defendants own the majority of the infringing domain

names.  (*See* Complaint, ¶¶ 14, 15; Defendants' Answer and Counterclaim, ¶ 15.)  Defendants

have engaged in a systematic effort to exploit and profit from the widespread public recognition

of Bright's REDTUBE trademark and the public's association of that name with Bright's popular

website.  (Complaint, ¶ 3.)  In doing so, Defendants have registered and use domains

incorporating Bright's registered REDTUBE mark, maintain affiliations with numerous

additional domains that exploit that mark, and engage in the pervasive replication and use of

Bright's mark in the operation of competing websites, in a manner that has been and continues to

be in bad faith.  (*Id.*)

---

[1]  Specifically, Bright is seeking damages and injunctive relief for:  (1) violation of the Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)); (2) infringement of a registered trademark (15 U.S.C. §1114(1)); (3) infringement, false designation of origin and unfair competition (15 U.S.C. § 1125(a)); (4) trademark dilution (15 U.S.C. § 1125(c); (5) common law trademark infringement and unfair competition; and (6) civil conspiracy.  (Complaint, ¶¶ 1, 2, Dkt. No. 1; Verification, Dkt. No. 12.)

Defendants moved to dismiss Bright's Complaint for lack of personal jurisdiction over them.  (Dkt. 16, Motion to Dismiss.)  The Court denied Defendants' motion without prejudice and ordered the parties to engage in jurisdictional discovery.  (Order, Dkt. 49 at 2.)  At the close of jurisdictional discovery, Defendants filed a renewed motion to dismiss.  (Defendants' Renewed Motion to Dismiss, Dkt. 108.)  The Court denied Defendants' renewed motion. (Memorandum Opinion on Personal Jurisdiction, Dkt. 141.)  The Court ruled that it had personal jurisdiction over the corporate Defendants based on their contacts with Virginia and with the United States as a whole.  (*Id.* at 13-16.)  The Court further found that it has personal jurisdiction over Defendant Olligschläger because he was "directly involved in and responsible for decisions that [Bright] alleges amount to tortious conduct."  (*Id.* at 21.)  The Court also found that it has personal jurisdiction over Defendant Olligschläger on the grounds that he is the alter ego of the two corporate Defendants.  (*Id.* at 23.)

After the Court held it had personal jurisdiction over Defendants and denied their motion to dismiss, Defendants filed the Answer and Counterclaim at issue.  (Defendants' Answer and Counterclaim, Dkt. 143.)  Defendants make one Counterclaim, "[p]ursuant to 15 U.S.C. §§ 1064(1), 1119 and 1141a," in which they allege that one of Bright's  U.S. trademark applications "was intentionally, fraudulently and wrongfully used by J&P and/or Bright Imperial in violation of Section 61 of the Lanham Act as the predicate for international registration 1003812."[2]

---

[2]  The only basis for Defendants' allegation of intentional and fraudulently wrongful conduct is the assertion, on information and belief, that Jager lacked "real and effective industrial or commercial establishment in the United States" when it applied for international registration of the REDTUBE mark under the Madrid Protocol.  In making this bold but baseless accusation, Defendants refer to a letter written at about the same time asserting that Jager was not subject to personal jurisdiction in an action brought in California Superior Court.  (Counterclaim, ¶ 12 and Ex. A.)  But Defendants' counterclaim fails to disclose that the action with respect to which that letter was sent had nothing whatsoever to do with the REDTUBE trademark, with Jager, or with Jager's presence in the U.S.  This is apparent, however, from the complaint filed in that action,

(Counterclaim, ¶ 16.)  They claim they have been damaged because Bright asserted its U.S.

Registrations against them in this action.  (*Id.*)  They also claim they were injured because

"international registration 1003812 has been used to secure trademark registrations in multiple

international jurisdictions."  (*Id.*)  Defendants make no other allegations of wrongdoing, nor do

they allege any other damage.  (*See Id.*)  For relief, Defendants request an order from the Court

dismissing this action with prejudice, "Cancelling U.S. Trademark Reg. Nos. 4,035,355 and

3,884,412," and "Directing the U.S. Commissioner of Patents and Trademarks to notify the

World Intellectual Property Organization that International Registration 1003812 should be

cancelled."  (*Id.* at p. 27.)

## III.   DEFENDANTS DO NOT STATE A VALID COUNTERCLAIM FOR CANCELLATION OF BRIGHT'S U.S. TRADEMARKS

### A.   Legal Standard

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure

12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint."  *PODS*

*Enterprises, Inc. v. ABF Freight Systems, Inc.*, No. 11–cv–84, 2011 WL 4948397, *2 (M.D.Fla.

Oct. 17, 2011); *SunTrust Mortg., Inc. v. Mortgages Unlimited, Inc.*, No. 11cv861, 2012 WL

1942056, *2-3 (E.D.Va. May 29, 2012).  "A motion filed under Rule 12(b)(6) challenges the

legal sufficiency of a complaint, considered with the assumption that the facts alleged are true."

*Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted).  "And the legal

sufficiency of a complaint is measured by whether it meets the standards for a pleading stated in

Rule 8 (providing general rules of pleading)… and Rule 12(b)(6) (requiring that a complaint

state a claim upon which relief can be granted)."  *Id.*  "[T]he requirements for pleading a proper

---

and from the fact that the plaintiff in that action never pursued claims against Jager.  (RJN, Exs.
D, E.)  Apparently, Defendants' believe that they are the only ones entitled to dispute jurisdiction
despite doing business in the United States.

complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him." *Id.* "'[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief ***that is plausible on its face*.'" *Id.* at 193 (quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) and adding emphasis).  A complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

> **B.    The Court May Cancel a U.S. Trademark Registration Only on the Statutory Grounds Permitted for Cancellation by the Patent and Trademark Office, and Defendants Have Not Asserted Any Such Ground for Cancellation**
>
> **1.    Only the grounds expressly provided by United States law can support a claim for cancellation**

"Congress adopted 15 U.S.C. § 1119 to give the district court power concurrent with, but not in excess of, the Patent and Trademark Review Board and . . . the district court is also limited by the language of the statutes controlling the Board." *Shakespeare Co. v. Silstar Corp. of America, Inc.*, 9 F.3d 1091, 1092 (4th Cir. 1993); *Assurant, Inc. v. Medassurant, Inc.*, No. 08–CV–569, 2010 WL 3489129, *3 (W.D.N.C. July 26, 2010).  To state a claim for cancellation, the defendant must show "(1) that it possesses standing to challenge the continued presence on the register of the subject registration and (2) that there is a valid ground why the registrant is not entitled under law to maintain the registration." *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1026 (C.C.P.A. 1982).  A valid ground for cancellation of a mark registered less than five years is a ground that "would have prevented registration in the first place." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 945–46 (Fed.Cir. 2000).  "The 'valid ground' that must be alleged and ultimately proved by a cancellation petitioner must be a '***statutory ground*** which negates the appellant's right to the subject registration.'" *Young v. AGB Corp.*, 152 F.3d 1377,

1380 (Fed.Cir. 1998) (quoting *Lipton*, 670 F.2d at 1030, emphasis original).  *See also, Assurant,*
2010 WL 3489129, *3 ("In considering cancellation of a trademark registration, 'a court is
restricted to the grounds for administrative revocation of a trademark found in 15 U.S.C.
§ 1064.'"); 3 *McCarthy on Trademarks and Unfair Competition,* § 20:52 (4th ed., Thompson
Reuters 2012), hereafter "*McCarthy.*"  In other words, to maintain their counterclaim Defendants
must state and support an ***express statutory ground*** for cancellation of Bright's U.S.
Registrations.

### 2.     The alleged insufficiency of the application for international registration of Bright's trademarks is not a ground for cancellation

There is no statutory ground for cancellation of Bright's U.S. Registrations based on the
allegations in Defendants Counterclaim, and Defendants point to none.  Defendants do not assert
***any*** inadequacy or impropriety with respect to Bright's U.S. Registrations themselves.
Defendants do not allege that Bright or anyone else did anything wrong in connection with the
applications for or registration of Bright's U.S. registered trademarks.  The sole basis for
Defendants' counterclaim is the allegation that Bright "intentionally, fraudulently and
wrongfully used" the U.S. Registrations as part of an application for international registration.
(Counterclaim, ¶ 16.)  In other words, Defendants contend that Bright's U.S. Registrations
should be cancelled based on an alleged impropriety in an entirely different and subsequent
application.  Neither this nor anything else in Defendants' counterclaims establishes a valid
statutory ground for cancelling Bright's U.S. Registrations.

No statutory provision permits denial or cancellation of a registration based on an
insufficiency or impropriety in a separate application, such as an application for international
registration under the Madrid Protocol.  "In general, a petition to cancel a mark that has been on
the Principal Register less than five years may be grounded on two bases: (1) that the mark is

barred from registration under one of the statutory bars of Lanham Act § 2 [15 U.S.C. § 1052]; and (2) that the mark comes within any of the specifically enumerated grounds under which a registration may be canceled "at any time." *McCarthy*, § 20:52; 15 U.S.C. § 1052 (listing the grounds on which a trademark may be refused registration); 15 U.S.C. §§ 1064(3), (4) and (5) (listing the grounds on which a registration may be cancelled at any time); *Young v. AGB Corp.*, 152 F.3d at 1380 (other grounds may be found "in the Lanham Act").  Defendants do not cite or describe any of the grounds enumerated in any section of the Lanham Act for denying or cancelling a registration.

Defendants allege that Bright's predecessor applied for its international application in violation of Section 61 of the Lanham Act.  (Counterclaim, ¶ 16.)  However, this section provides no basis for cancelling a U.S. Registration; it merely permits the owner of a U.S. trademark application or registration file for an international application.  *See* Lanham Act, § 61,15 U.S.C. § 1141a (stating that the owner of a basic U.S. registration or application may file an international application) and *passim*.  This provision neither expressly nor implicitly provides any ground for cancelling a trademark application or registration, much less a U.S. application or registration.  Moreover, as discussed in greater detail below, there is no treaty provision, statute, or caselaw suggesting that U.S. trademark registrations are in any way dependent on an international registration, or subject to cancellation based on any alleged impropriety in making an application pursuant to the Madrid Protocol.  *See* Section C below.

### 3.    Defendants do not plead a viable counterclaim under any reading or possible grounds

There is no way to construe Defendants' allegations as asserting a viable counterclaim. An allegation that a registered mark has been misused, or as Defendants claim, "intentionally, fraudulently and wrongfully used," does not provide a basis for a counterclaim.  Lacking, as it

does, any statutory basis, Defendants' counterclaim might be construed as attempting to assert trademark misuse or unclean hands.  However, "[u]nclean hands or trademark misuse is purely an affirmative defense and does not form the basis for an affirmative claim for recovery" or cancellation.  *McCarthy*, § 31:44;  *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F.Supp.2d 823, 831 (E.D.Va. 2001) ("[a]uthority is uniform in allowing trademark misuse only as an affirmative defense to a trademark infringement action"); *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 10 Civ. 3998, 2012 WL 98493, *5 (S.D.N.Y. Jan. 11, 2012) (collecting cases); *1-800 Contacts, Inc. v. Memorial Eye, P.A.*, 100 U.S.P.Q.2d 1151, 2010 WL 5149269, *4 (D.Utah 2010) (noting that trademark misuse is generally viewed as another term for unclean hands and dismissing trademark misuse and unclean hands counterclaim alleging plaintiff "engaged in malicious cyber activities" and "made fraudulent statements to the trademark office... related to the merits of its trademark claims."); *Juno Online Serv. v. Juno Lighting, Inc.*, 979 F.Supp. 684, 687-691 (N.D.Ill. 1997) (setting forth a detailed history of the trademark misuse defense and declining to allow the defense to be brought as an affirmative claim).  Thus, no matter how Defendants' allegations are interpreted, they do not state a valid counterclaim.

> **4.    Defendants' allegations that Bright improperly "used" its U.S. Registrations cannot be entertained as an affirmative defense because they are irrelevant to the rights Bright asserts**

Defendants allegations fail to support an affirmative  defense of "unclean hands" or "misuse."  In order to assert such a defense, Defendants must allege and establish that Bright engaged in misconduct in obtaining the rights at issue, or at the very least in connection with the assertion of those rights.  Defendants do not and cannot assert either.

Defendants allege that Bright's predecessor made misstatements in its international trademark application under the Madrid Protocol.  However, as discussed, Defendants assert no impropriety of any kind in the acquisition of Bright's U.S. trademarks.  "[T]he doctrine of

unclean hands applies only with respect to the right in suit. What is material is not that the plaintiff's hands are dirty, but that he dirtied them *in acquiring the right he now asserts*." *People for Ethical Treatment of Animals, Inc. v. Doughney*, 113 F.Supp.2d 915, 921 (E.D.Va. 2000) (granting summary judgment for plaintiff and holding defendant did not state a viable defense of "misuse" based on alleged unclean hands with regard to trademarks not at issue) (emphasis added); *1-800 Contacts*, 100 U.S.P.Q.2d 1151, 2010 WL 5149269, *3 (defense failed because inequitable conduct must "be related to the plaintiff's cause of action").  Whether Bright allegedly made misstatements in its international application is not relevant to its claims based on its U.S. Registrations even if the international application was also based on Bright's U.S. application.  The alleged misconduct in acquiring the international application was not misconduct in acquiring the U.S. Registrations, and hence does not support a defense of misuse or unclean hands.

　　　To the extent such a defense can be asserted based on conduct unrelated to the *acquisition* of the trademark rights at issue in an action, it must at least relate to the *assertion* of those rights.  *See PODS Enterprises, Inc. v. ABF Freight Systems, Inc*., No. 11cv84 2011, WL 4948397, 16-17 (M.D.Fla. Oct. 17, 2011) (striking unclean hands defense because allegations that plaintiff "engaged in trademark misuse and violated unfair competition and antitrust laws by sending cease-and-desist letters and filing suit" were not "specifically related to the trademark itself").  "What is material is not that plaintiff's hands are dirty, but that he dirtied them in acquiring the rights he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant."  *Tveter v. AB Turn-O-Matic*, 633 F.2d 831, 839 (9th Cir. 1980) (using trademark with the words "patent pending" on a device for which no patent was pending was not "misuse" baring enforcement of trademark); *PODS Enterprises, Inc.*

*v. ABF Freight Systems, Inc.*, No. 11cv84 2011, WL 4948397, 16-17 (M.D.Fla. Oct. 17, 2011) (striking unclean hands defense because allegations that plaintiff "engaged in trademark misuse and violated unfair competition and antitrust laws by sending cease-and-desist letters and filing suit" were not "specifically related to the trademark itself"); *Northwestern Corp. v. Gabriel Mfg. Co., Inc.*, No. 95 C 2004, 1998 WL 525431, 8 (N.D.Ill. Aug. 19 1998) (misuse defense failed because "[w]hile circumventing bankruptcy, restraining trade, and extending patents are all bad things, none of them involve [plaintiff] misrepresenting its [product] through the use of its configuration trademark").  However, Bright is not asserting any rights based on its international application.[3]  The insufficiency that Defendants allege is unrelated to Bright obtaining its U.S. Registrations, and unrelated to the trademark rights asserted by Bright in this action.  Therefore, Defendants' allegations do not establish a viable defense.

### 5. Cancellation not available remedy to Defendants regardless of whether their allegations are construed as a counterclaim or affirmative defense

As discussed above, a court's power to order cancellation of a registered mark is coextensive with that of the Patent and Trademark Review Board.  *Shakespeare Co.*, 9 F.3d at 1092.  An order for cancellation must be based on valid statutory grounds, and there are no such grounds for cancelling a mark based on the allegations in Defendants' counterclaims.  *Young*, 152 F.3d at 1380; Sections B.1 and B.2, above.  Similarly, even if construed as a defense of unclean hands or misuse, Defendants' allegations do not and cannot establish grounds to cancel Bright's U.S. Registrations.  "[E]quitable defenses are just that—defenses—and are not grounds for opposing registration." *University Book Store v. University of Wisconsin Board of Regents*,

---

[3]  Indeed, as explained below, an international "registration" does not create independently enforceable trademark rights but is merely a means of applying for rights in member countries. *See* Section C, below.

33 USPQ2d 1385, 1401 n. 39 (TTAB 1994); *see also Young*, 152 F.3d at 1379-80 (holding that the grounds and standing requirements for cancellation and opposition are the same).  "While a party may allege unclean hands as an affirmative defense in a Board proceeding, there is no authority for opposer's assertion thereof as a ground for its notice of opposition." *Seculus Da Amazonia v. Toyota Jidosha Kabushiki Kaisha*, 66 U.S.P.Q.2d 1154, 1157-58, 2003 WL 648117 (T.T.A.B. 2003).  *See also, e.g., Carl Zeiss Stiftung v. VEB Carl Zeiss Jena*, 298 F.Supp. 1309, 1312 (S.D.N.Y.1969) ("'(P)roof of violation of the antitrust laws of the United States by a registrant in the use of his mark does not under this act destroy the validity of or the right of the registrant to continue to use the mark." (quoting Representative Lanham, 92 Cong.Rec. 7524)); *Knickerbocker Toy Co., Inc. v. Faultless Starch Co.*, 59 C.C.P.A. 1300, 1309, 467 F.2d 501, 509 (Cust. & Pat.App. 1972) (allegations of copyright infringement and unfair competition are irrelevant to right to register a trademark and should not be included in opposition or cancellation pleadings).

In sum, Defendants' allegations do not state a viable counterclaim for cancellation because they do not allege or describe any statutory basis for cancellation.  Furthermore, allegations of wrongful use provide no basis for a counterclaim.  In any event, Defendants fail to assert a viable defense because they do not allege any wrongdoing in connection with the rights Bright asserts.  Moreover, even if Defendants have asserted a valid defense, Defendants' assertions still would not support cancellation of Bright's U.S. Registrations.  The allegations of the counterclaim, therefore, do not state a claim on which relief may be granted, and the counterclaim must be dismissed.

### C.  Defendants Cannot Assert a Claim for Cancellation of Bright's International Trademark Application or Its U.S. Trademarks Under the Madrid Protocol

As discussed above, Defendants' counterclaim asserts no insufficiency or impropriety of any kind in the applications for or registration of the U.S. trademarks now owned by Bright.  The sole basis for Defendants' counterclaim is the assertion—on information and belief—that Bright's predecessor lacked a "real and effective industrial or commercial establishment in the United States" when it applied for international registration of the REDTUBE mark under the Madrid Protocol."[4]  That is not the case.  Even assuming that it were, and also assuming that the conduct of Bright's predecessor could be attributed to Bright, Defendants do not have a valid counterclaim.  The gist of Defendants' counterclaim is that Bright's predecessor did not comply with a requirement for applying for international registration of the REDTUBE mark.  However, neither the Madrid Protocol nor any provision of United States law implementing it provides any foundation for a claim by Defendants based on that alleged non-compliance.

In April 2009, Bright's predecessor, Jager & Polacek GmbH ("Jager"), submitted the application for international registration of the REDTUBE mark pursuant to the Madrid Protocol.  (Defendants' Answer and Counterclaim, Dkt. No. 143, at 23, ¶ 9;RJN,  Ex. C.)  As explained by the United States Patent and Trademark Office, "the Madrid Protocol is one of two treaties comprising the Madrid System for international registration of trademarks."  (Patent & Trademark Office, http://www.uspto.gov/trademarks/law/madrid/index.jsp, viewed June 29, 2012.)  International treaties such as the Madrid Protocol provide no basis for the assertion of

---

[4]  Protocol Relating to the Madrid Agreement Concerning the International Registration of Marks, adopted June 27, 1989 and amended Oct. 3, 2006 and Nov. 12, 2007, available at http://www.wipo.int/madrid/en/legal_texts/trtdocs_wo016.html.  *See also* Senate Treaty Doc. No. 106-41, available from the United States Government Printing Office at http://www.gpo.gov/fdsys/browse/collection.action?collectionCode=CDOC, hereafter "Senate Treaty Doc. No. 106-41."

individual rights or causes of action unless they are self-executing and expressly provide for private rights of action. *Medellin v. Texas*, 552 U.S. 491, 505-506 (2008); *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968-969 (4th Cir. 1992). Only if a treaty contains provisions that require no legislation to make them operative will they be deemed to be self-executing. *Medellin*, 552 U.S. at 505-506. Furthermore, "[e]ven when treaties are self-executing in the sense that they create federal law, the background presumption is that '[i]nternational agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts.'" *Id.*, at 506, n. 3, quoting 2 Restatement (Third) of Foreign Relations Law of the United States § 907, Comment a, p. 395 (1986). *Accord*, *Mora v. New York*, 524 F.3d 183, 200 (2d Cir. 2008).

It appears that the Madrid Protocol is not self-executing. The State Department's letter of submittal to Congress indicates that the passage of legislation was necessary to the implementation of the Madrid Protocol. Senate Treaty Doc. No. 106-41, p. vii ("In the event that the United States accedes to the Protocol and Congress passes the necessary implementing legislation, the Protocol would operate in the United States as follows."). However, even if it is self-executing, it does not expressly create any private right of action. In particular, neither the Madrid Protocol nor any provision of United States law implementing it permit a private party to seek cancellation of a registered mark based on an insufficiency or impropriety in connection with an application for international registration.

The Madrid Protocol is a mechanism for ***applying*** for trademark rights in multiple member countries based on an application or registration in one of those countries. The Madrid Protocol does not establish an international trademark that is automatically enforceable; rather, preserves the pre-existing scheme of territorial control over the granting and enforcement of

trademark rights.  *McCarthy*, § 19:31.20.  In other words, the determination of whether trademark rights will be granted or enforced is still made independently by each member country.  *Id.*  Thus, once an application is made under the Madrid Protocol, "[t]he application then proceeds through whatever domestic examination process exists in each designated nation. Each designated trademark office has the right to refuse an 'extension of protection' on the usual grounds within the time limits specified in the Protocol."  *McCarthy*, § 19:31.50.  *See also* Madrid Protocol, Art. 5(1).

Thus, the Madrid Protocol contemplates the possibility that a private party may submit an opposition in one member country to the extension of protection for trademark rights in that country based on a registration or application in another, which may result in refusal to protect the mark in the country in which the opposition is submitted.  Madrid Protocol, Art. 5(2)(c).[5] The same is true under United States law, with respect to requests for extension of protection based on foreign marks.  15 U.S.C. § 1141(h)(a)(2); Trademark Manual of Examining Procedure, available at http://tess2.uspto.gov/tmdb/tmep/, ("TMEP") § 1904.4.  However, the Madrid Protocol does ***not*** provide for opposing the protection or seeking the cancellation of a mark based on any insufficiency or impropriety in the international application itself.  *See* Madrid Protocol, Article 5.  Nor does United States law.  *See* 15 U.S.C. §§ 1141h, 1063; 37 C.F.R. Part 7 (§§ 7.1-7.41); TMEP § 1904.4.  On the contrary, "[t]he various trademark offices can refuse protection ***only on the same grounds which would apply to an application for registration made directly to that office***."  *McCarthy*, § 19:31.50 (emphasis added).

---

[5]     *See also* Common Regulations under the Madrid Agreement Concerning the International Registration of Marks and the Protocol Relating to that Agreement ("Common Regulations"), Rules 17, 18bis.  The Common Regulations are available online at http://www.wipo.int/madrid/en/legal_texts/common_regulations.htm.

Furthermore, the Common Regulations adopted under the Madrid Protocol and United States authority both address the process for resolving "irregularities" in applications for international registration, and neither provides that any private party may object on the basis of such irregularities; rather, they are addressed exclusively by the trademark office in the country of origin or by the International Bureau of the World Intellectual Property Organization, which administers the Madrid Protocol.  Common Regulations, Rules 11-13; TMEP, §§ 1902.03, 1902.03(a), 1902.07, 1902.07(a)-(f).  Thus, irregularities in an application for international registration provide no basis for any private party opposition, objection, or other proceeding.

The only situation in which an international application under the Madrid Protocol may be cancelled is if the original trademark application or registration that provided the basis for the application is cancelled as the result of a proceeding in the country of origin.  Madrid Protocol, Article 6; Common Regulations, Rule 22; 15 U.S.C § 1141c.  ***But nothing in the Madrid Protocol or in United States law implementing it permits the original trademark application or registration to be cancelled based on any alleged insufficiency or impropriety in the international application.***  *Id.*  *See also* Madrid Protocol, *passim;* 15 U.S.C. §§ 1141, 1141a-n.

In short, neither the Madrid Protocol nor any provision of United States law implementing it provide any basis for a claim for cancellation of a U.S. trademark based on alleged insufficiency or impropriety in an application for international registration based on a U.S. trademark.  Not surprisingly, Defendants' counterclaim identifies no authority for such a claim.  Thus, their counterclaim must be dismissed.

## D.   The Relief Defendants' Seek Based on Their Counterclaim Would Be Futile

Even if Defendants could assert a legitimate claim for cancellation (which they cannot), the cancellation they seek would not profit them.  Thus, the relief they seek is futile.

First, if Bright's registered U.S. trademarks were cancelled, Bright would still be entitled to pursue its claims against Defendants based on its common law rights.  Cancellation would not "affect the mark's validity, because a trademark need not be registered to be enforceable." *Specialized Seating, Inc. v. Greenwich Industries, LP*, 616 F.3d 722, 728 (7th Cir. 2010).  For example, "a trademark can be enforced under 15 U.S.C. § 1125(a) even after its federal registration is cancelled for fraud."  *Id.* (citing *Orient Express Trading Co. v. Federated Department Stores, Inc.*, 842 F.2d 650, 653–54 (2d Cir. 1988)).  *See also Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001) (a trademark can be enforced under state common law even after its federal registration is cancelled); *Aveda Corp. v. Evita Marketing, Inc.*, 706 F.Supp. 1419, 1425 (D.Minn. 1989) ("common law creates the underlying right to exclude" and so even if the federal registration is cancelled, "the plaintiff's common law rights in the mark may still support an injunction against an infringing defendant"); *McCarthy*, § 31:60.

Second, if Bright's international trademark application were cancelled, Bright would be entitled to transform its international application into national applications in each of the countries where it sought the extension of protection, with priority based on the date of the international application.  Madrid Protocol, Article 9quinquies; 15 U.S.C. § 1141j(c); *McCarthy*, § 19:31.65 (cancelled international application can be "transformed into national or regional applications in the nations in which the international application had effect [and] each such individual application then would have the benefit of the international registration as its priority date.").  Bright's indisputably superior trademark rights would thus result in the registration of its REDTUBE mark in those countries even if the international application were cancelled.

Thus, Defendants' counterclaim is not only baseless but pointless as well.  The absence of any meaningful relief further supports the dismissal of Defendants' counterclaim.

**E.   The Law Provides No Remedy For the Counterclaim that Defendants Assert, so Defendants Lack Standing to Assert It**

As explained, Defendants' counterclaim alleges that Bright's predecessor did not comply with one of the Madrid Protocol requirements for filing its application for international trademark registration.  Defendants do not assert any other impropriety.  As explained, the alleged insufficiency in an application for international registration provides no basis for the cancellation of Bright's U.S. trademarks, and neither the Madrid Protocol nor the provisions of U.S. law implementing provide for a claim for cancellation of an application for international registration.  The law does not protect Defendants from the wrong they allege nor does it give them a remedy to redress their alleged grievance.  Therefore, Defendants lack standing to bring their counterclaim.

Under Article III, federal judicial power is restricted to cases and controversies. *Sprint Communications Co. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008); *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990).  Three requirements must be met for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Thus, "the Supreme Court's standing doctrine requires litigants to establish an injury to an interest 'that the law protects when it is wrongfully invaded.'"  *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009).  "An injury-in-fact is 'a 'concrete and particularized' invasion of a 'legally protected interest.'" *Id*. (quoting *Sprint Communications*, 554 U.S. at 273).  Furthermore, "Article III standing requires an injury-in-fact capable of being redressed by a favorable decision of the court."  *Id*. at 1072-3 (citing *Lujan*, 504 U.S. at 560-61).  "[W]hile a litigant need not definitively 'establish that a right of his has been infringed,' he 'must have a colorable claim to such a right' to satisfy Article III."  *Id.  See also Mumid v. Abraham Lincoln High School*, 618 F.3d 789, 797 (8th Cir.

2010) (dismissal for lack of standing was proper when "no remedy was available under the statute to redress the[] alleged injury" because injunctive relief could not redress the plaintiffs' injuries, and monetary damages are not available under the statute); *Jairath v. Dyer*, 154 F.3d 1280, 1283 n.8 (11th Cir. 1998) (Americans with Disabilities Act provided not remedy for the injury alleged, so plaintiff lacked standing).   Furthermore, an alleged injury-in-fact does not provide a basis for standing unless it would be remedied by the relief sought. *Sprint Communications*, 554 U.S. at 273.[6]

The law simply does not protect Defendants from the wrong they allege.  It provides no basis for the cancellation of Bright's U.S. trademarks based on an insufficiency in an application for international registration based on such marks, nor a direct claim for cancellation of an international application.  Defendants do not have a "legally protected interest" for which the law provides a remedy, and therefore lack standing.  Furthermore, for the reasons explained above, even if Defendants' could pursue their counterclaim, the relief they seek would neither prevent the prosecution of this action nor result in the invalidation of any national trademark rights in any other country.  Hence, the relief sought would not constitute a meaningful remedy, and Defendants lack standing for this reason as well.

---

[6]  The standards for asserting standing in a petition for cancellation submitted to the Patent and Trademark Office are minimal.  *See, e.g., Lipton Industries, Inc. v. Ralston Purina Co*., 670 F.2d 1024 (Cust. & Pat.App. 1982).  However, standing in a proceeding in a federal district court is subject to irreducible requirements under Article III of the United States Constitution.  *See, e.g., McBumey v. Cuccinelli,* 616 F.3d 393, 402 (4th Cir. 2010) ("The irreducible constitutional minimum of standing requires (1) an injury in fact—a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation—a fairly traceable connection between the plaintiffs injury and the complained-of conduct of the defendant; and (3) redressability—a likelihood that requested relief will redress the alleged injury." (internal quotations omitted).)

## IV.   DEFENDANTS' AFFIRMATIVE DEFENSES ARE BASELESS OR NOT PLEAD WITH SUFFICIENT PARTICULARITY, AND SHOULD BE STRICKEN

### A.   To Be Properly Plead, Affirmative Defenses Must Give Plaintiff Fair Notice of the Defense

A Motion to Strike is governed by Rule 12(f) of the Federal Rules of Civil Procedure, which states that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). "By its language, '[t]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'" *Gregory v. Belfor USA Group, Inc.*, No. 12cv11, 2012 WL 2309054, *1-2 (E.D.Va. June 15, 2012) (quoting *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)). Federal Rule of Civil Procedure 8(b) requires that a party state a short and plain statement in its defenses when responding to a pleading. Fed.R.Civ.P. 8(b)(A).

"The majority of district courts have extended the *Twombly–Iqbal* standard to a defendant's pleading of affirmative defenses." *Francisco v. Verizon South, Inc.*, No. 09cv737, 2010 WL 2990159, *6 (E.D.Va. July 29, 2010); *Aguilar v. City Lights of China Restaurant, Inc.*, No. DKC 11–2416, 2011W L 5118325, *2-4 (D.Md. Oct. 24, 2011). "These courts have found that the 'same logic holds true for pleading affirmative defenses [as for pleading a complaint]— without alleging facts as part of the affirmative defenses, [a][p]laintiff cannot prepare adequately to respond to those defenses.'" *Francisco*, No. 09cv737, 2010 WL 2990159, *6 (citation omitted). "Many district courts have found that '[i]t makes no sense to find that a heightened pleading standard applies to claims but not to affirmative defenses.'" *Id.* (citation omitted). Even if a court does not apply the pleading standard of *Twombly* and *Iqbal* to affirmative defenses, "[p]roperly pleaded affirmative defenses must 'give plaintiff fair notice of the defense.'" *Desert European Motorcars, Ltd. v. Desert European Motorcars, Inc.*, No. EDCV 11–

197, 2011 WL 3809933, *1 (C.D.Cal. Aug. 25, 2011) (quoting *Wyshak v. City Nat'l Bank*, 607

F.2d 824, 827 (9th Cir. 1979).

> **B.      None of Defendants' Affirmative Defenses are Sufficiently Plead and All Should be Stricken**

Defendants' entire statement of their affirmative defenses is as follows:

> 1.      The Complaint fails to state claims upon which relief may be granted.
> 2.      The claims contained in the Complaint are barred by laches.
> 3.      The claims contained in the Complaint are barred by acquiescence.
> 4.      The claims contained in the Complaint are barred by unclean hands.

(Defendants' Answer and Counterclaim, Dkt. No. 143 at 21.)

None of Defendants' statements of their defenses provide Bright with fair notice of the

defense or enough information to permit Bright to prepare to meet the defenses.  "[E]ach sets

forth conclusory legal statements wholly devoid of any supporting factual content."  *Aguilar*, No.

DKC 11–2416, 2011W L 5118325, *4 (striking bare assertion of laches as a defense).  "As a

result, these defenses fail to set forth in 'short and plain' terms the nature of the asserted

defense."  *Id.*  They do not meet the requirements of Rule 8 regardless of whether the Court also

applies the standards articulated in *Twombly* and *Iqbal*.  They must be stricken.  *Id.*; *Smithville*

*169 v. Citizens Bank & Trust Co.*, No. 11–CV–0872, 2012 WL 13677,* 3 (W.D.Mo. Jan. 4,

2012) ("textbook examples of labels and conclusions" must be stricken).

> **1.      Defendants' Affirmative Defense of Failure to State a Claim Must be Stricken**

It is debatable whether an assertion of failure to state a claim is a proper affirmative

defense or should instead be brought as a motion to dismiss.  *Francisco*, No. 09cv737, 2010 WL

2990159, *8, n. 8.  However, even if it were a defense, Defendants' assertion of it is "too

conclusory to provide fair notice to [Bright], and [] fails to contain a factual basis entitling it to

be assumed true."  *Id.* (striking defense of failure to state a claim).  Defendants' First Affirmative

Defense must be stricken.  *Desert European Motorcars*, No. EDCV 11–197, 2011 WL 3809933, *1 (failure to state a claim asserted without more "is a mere legal conclusion without supporting facts linking that theory to the Case at bar, and therefore is insufficient to give Plaintiff fair notice of the basis of this defense.").

### 2.      Defendants' Affirmative Defense of Laches Must be Stricken

"In order to establish the defense of laches, 'a defendant must allege neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar.'"  *Desert European Motorcars*, No. EDCV 11–197, 2011 WL 3809933, *3 (citation omitted) (striking defense of laches).  Here, Defendants fail to state how Bright's conduct allegedly gave rise to this defense of laches, and Bright has no idea what allegations it should prepare to meet at trial.  The defense must be stricken.  *Aguilar*, No. DKC 11–2416, 2011W L 5118325, *4 (striking bare assertion of laches as a defense).

### 3.      Defendants' Affirmative Defense of Acquiescence Must be Stricken

"An infringement action may be barred by the doctrine of estoppel by acquiescence where the owner of the trademark, by conveying to the defendant through affirmative word or deed, expressly or impliedly consents to the infringement."  *Desert European Motorcars*, No. EDCV 11–197, 2011 WL 3809933, *6 (quoting *Sara Lee Corp. v. Kayser–Roth Corp*., 81 F.3d 455, 463 (4th Cir. 1996)).  "This defense implies active consent to an infringing use of the mark." *Id.*  Defendants' statement of the defense fails to state any facts concerning how Bright's actions allegedly gave rise to this defense of acquiescence.  It is "conclusory and fails to give Plaintiff fair notice." *Id.*  It must be stricken.

### 4.     Defendants' Affirmative Defense of Unclean Hands Must be Stricken

Defendants do not allege any facts to explain what behavior of Bright's allegedly constituted "unclean hands."  The Fourth Affirmative Defense "simply states a legal conclusion or theory without the support of facts explaining how it connects to the instant case."  *Desert European Motorcars*, No. EDCV 11–197, 2011 WL 3809933, *2 (citation omitted).  "[S]imply stating that a claim fails due to plaintiff's 'unclean hands' is not sufficient to notify the plaintiff what behavior has allegedly given them 'unclean hands.'"  *CTF Development, Inc. v. Penta Hospitality, LLC*, No. C 09–02429, 2009 WL 3517617, *7 (N.D.Cal. Oct. 26, 2009). Furthermore, to the extent Defendants rely on the allegations of their counterclaim to support a defense of unclean hands or misuse, their asserted defense is without merit for the reasons set forth above (Sections B.3 and B.4).  Therefore, this defense also fails and must be stricken.

## V.     CONCLUSION

Bright respectfully requests that the Court dismiss Defendants' counterclaim with prejudice because Defendants fail to state a claim on which relief may be granted and lack standing, and strike Defendants' affirmative defenses as inadequately plead.

**RESPECTFULLY SUBMITTED,**

Dated: July 2, 2012

*/s/ Sheldon M. Kline*
Sheldon M. Kline (VA Bar No. 27959)
James M. Chadwick (admitted *pro hac vice*)
Karin H. Johnson (admitted *pro hac vice*)
Tenaya M. Rodewald (admitted *pro hac vice*)
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, NW, 11th Floor East
Washington, DC 20005
Telephone: (202) 218-0000
Facsimile: (202) 218-0020
skline@sheppardmullin.com
jchadwick@sheppardmullin.com
kjohnson@sheppardmullin.com
trodewald@sheppardmullin.com
*Attorneys for Plaintiff Bright Imperial Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2 day of July, 2012, I will electronically file the foregoing

MOTION TO DISMISS COUNTERCLAIM AND STRIKE AFFIRMATIVE DEFENSES OF

DEFENDANTS RT MEDIASOLUTIONS, S.R.O, ET AL. with the Clerk of the Court using the

CM/ECF system , which will then send a notification of such filing (NEF) to the following

counsel of record:

> Jay C. Johnson
> DORSEY & WHITNEY LLP
> 1801 K Street NW, Suite 750
> Washington, DC 20006
> E-mail: johnson.jay@dorsey.com

> /s/ Sheldon M. Kline
> Sheldon M. Kline (VA Bar No. 27959)
> James M. Chadwick (admitted *pro hac vice*)
> Karin H. Johnson (admitted *pro hac vice*)
> Tenaya M. Rodewald (admitted *pro hac vice*)
> SHEPPARD MULLIN RICHTER & HAMPTON LLP
> 1300 I Street, NW, 11th Floor East
> Washington, DC 20005
> Telephone: (202) 218-0000
> Facsimile: (202) 218-0020
> skline@sheppardmullin.com
> jchadwick@sheppardmullin.com
> kjohnson@sheppardmullin.com
> trodewald@sheppardmullin.com